## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____ )
JEFFREY A. LOVITKY                      )
1776 K Street, NW, Suite 800            )
Washington D.C. 20006                   )
Plaintiff,                              )
                                        )
                                        )
v.                                      ) Civil Action No. _____
                                        )
                                        )
DONALD J. TRUMP,                        )
in his official capacity as             )
President of the United States          )
                                        )
                                        )
Defendant                               )
_____)

## COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MANDAMUS RELIEF

## JURISDICTION AND VENUE

1. This is a civil action brought to compel compliance by the President with the financial disclosure requirements of the Ethics in Government Act (EIGA), 5 U.S.C. App. § 101 et seq. The EIGA mandates a full and complete statement of personal liabilities in excess of $10,000. 5 U.S.C. App. § 102(a)(4), 5 U.S.C. app. § 102(b)(1)(B). This action alleges that the financial disclosure reports filed by the President on May 15, 2018, and May 15, 2019 obscured the liabilities he was required to disclose, i.e., his debts as well as the debts of his spouse and dependent child (hereinafter referred to as "personal liabilities"), with liabilities incurred by business entities for which neither he, his spouse, or dependent child were liable (hereinafter referred to as "non-personal liabilities").  As a consequence, the President violated 5 U.S.C. app. § 102(a)(4); 5 U.S.C. app. § 102(b)(1)(B); and 5 C.F.R § 2634.305. Plaintiff seeks injunctive,

declaratory, and mandamus relief in order to require the President to amend his May 15, 2018 and May 15, 2019 financial disclosure reports for the purpose of specifically identifying the personal liabilities that he was required to report.

2. Plaintiff practices law in Washington D.C. Plaintiff is filing this action as a *pro se* plaintiff. Defendant is President of the United States. Defendant is being sued in his official capacity.

3. This Court has jurisdiction under 28 U.S.C. § 1331 (general federal question), 28 U.S.C. § 1361 (mandamus), and 28 U.S.C. § 2201 (declaratory judgment). Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(e)(1).

4. The EIGA, as well as implementing regulations, requires the President to disclose only personal liabilities, i.e., his personal debts, as well as the personal debts of his spouse and/or dependent child. As will be demonstrated below, the President's financial disclosure reports commingled personal liabilities, with debts of corporate entities for which neither he, his spouse or dependent child were liable. As a consequence, the President has obscured the debts that he was required to report. The President's failure to specifically identify the debts that must be reported deprived plaintiff of information that he is entitled by law to receive. This informational injury is itself sufficient to satisfy constitutional standing requirements.

5. As indicated by the disclosure report, the President has financial interests in several hundred different LLC's. The President is not liable for the debts of an LLC, solely by virtue of being a member or manager of the LLC. His financial exposure for debts of the LLC is limited to the amount of his investment in that LLC, unless he agrees with creditors of the company to be personally liable for those debts. On the other hand, creditors to whom the President is personally liable have recourse to all of his assets. These personal liabilities are far more likely to

influence the President's decisions than would a liability of a corporate entity in which the

President may have an investment interest.  A liability for which all of one's assets are at risk is

more likely to influence the decisions of that person than a liability for which the financial

consequences are limited to the amount of an individual's investment in a particular company.

As a consequence, the magnitude and severity of any conflicts of interest resulting from the debts

listed on Part 8 of the President's financial disclosures are greatly increased if those liabilities are

personal liabilities.

6. The President's failure to specifically identify the personal debts that he was required

to report deprived plaintiff of (a) an opportunity to make an independent judgment as to the

integrity of the President, and whether the President's actions have been or could in the future be

influenced by conflicts of interests, and (b) information required to evaluate the past and future

performance of the President.

7. The information to which plaintiff is entitled under the EIGA must be made available

to plaintiff if he is to have an opportunity to participate in the political process in an informed

manner. Plaintiff cannot petition members of Congress to enact legislation to strengthen conflicts

of interest laws, or to require the President to take mitigating actions to eliminate any conflicts of

interests, if he lacks information concerning those conflicts. Plaintiff cannot enlist the news

media to publicize conflicts of interests and thereby bring public attention to the issue, if he is

unaware of those conflicts because the EIGA disclosures have not been provided.  Plaintiff

cannot use the information in the EIGA disclosures to speak intelligently with friends, neighbors,

and colleagues concerning actual or potential conflicts of interests, in the absence of information

that may reveal those conflicts.

8.   Plaintiff is registered to vote in the State of Texas. Exhibit 1 Voter Registration

Certificate.  The ability to make a judgment as to whether the President's actions have been or

could in the future be influenced by conflicts of interests is a critical element in the making of an

informed voting decision.  An informed voting decision requires that Plaintiff have sufficient

information to evaluate whether the President's past performance in office has been influenced

by personal financial considerations, as well as to determine whether the President could in the

future be influenced by personal financial considerations. The President's failure to specifically

identify the personal liabilities he was required to report, makes it impossible for Plaintiff to

evaluate the President's past performance in office, as well as the potential for future conflicts of

interests.   This in turn precludes Plaintiff from making an informed voting decision in

connection with the Texas Republican Presidential Primary scheduled for March 3, 2020 (Tex.

Elec. Code ¶ 41.007), as well as the general election on November 3, 2020.  Plaintiff will suffer

irreparable injury unless the information sought by this litigation is obtained prior to voting in

these elections.

9. Part 8 of the President's May 16, 2016, May 15, 2017, May 15, 2018, and May 15,

2019 financial disclosures list the debts of various corporate entities. A copy of the President's

May 16, 2016 financial disclosure, downloaded from the Wall Street Journal website

(http://www.wsj.com/public/resources/documents/TrumpdisclosureMay2016.pdf (last accessed

April 19, 2019) is attached as Exhibit 2. A copy of the June 14, 2017 financial disclosure

statement, attached as Exhibit 3, may be retrieved through the Office of Government Ethics

website at

https://extapps2.oge.gov/201/Presiden.nsf/PAS+Index/12DAC79CC95F849085258142002703C

A/$FILE/Trump,%20Donald%20J.%20%20final278.pdf  (last accessed on April 19, 2019).  A

copy of the May 15, 2018 financial disclosure statement, attached as Exhibit 4, may be retrieved

through the OGE website using the following URL:

https://oge.app.box.com/v/Trump2018Annual278 (last accessed January 31, 2019).  A copy of

the President's May 15, 2019 financial disclosures, attached hereto as Exhibit 5, may be

retrieved through the OGE website using the following URL:

https://extapps2.oge.gov/201/Presiden.nsf/President%20and%20Vice%20President%20Index

(last accessed May 17, 2019).

10. The liabilities reported on these four financial disclosure statements are identical,

with the exception of (a) the loan to Fifty-Seventh Street Associates LLC, which was satisfied

during calendar year 2017; (b) the mortgages on 1094 S Ocean Blvd and 124 Woodbridge Road,

which were satisfied during calendar year 2017, (c) a loan from the President's former personal

attorney, Michael Cohen, to the President, which was satisfied during calendar year 2017, (d) the

loan to TIHT Commercial, which was modified in 2016, and (e) the loan to 1125 South Ocean

LLC, which was incurred in 2018.

11. Due to the lack of disclosure of personal liabilities, Plaintiff will be unable to evaluate

the nature of any changes to those liabilities that may be reflected on any subsequent disclosure

statements. By way of illustration, if a lender were to curry the President's favor by

extinguishing his liability for any of the loans identified in the May 2018 report, it would be

impossible to detect that information from the President's subsequent reports, because it is

impossible to know which of the liabilities listed on the May 2018 report were personal to the

President.  In essence, any changes to the President's liabilities that occur between the period

covered by the May 2018 report, and the period covered by subsequent reports, will be

permanently obscured, unless the court orders the President to amend his May 2018 filing to

specifically identify personal liabilities.  The same analysis is equally applicable to all future reporting periods.

12. On January 23, 2017, plaintiff sent a letter via certified mail to White House Counsel Donald McGahn expressing his concerns pertaining to this matter, and requesting his response thereto. Mr. McGahn did not respond to this letter. A copy of this letter is attached as Exhibit 6. On March 14, 2017, Plaintiff filed an action in the United States District Court for the District of Columbia for a writ of mandamus directing the President to specifically identify his liabilities on his May 2016 financial disclosures. The complaint as amended alleged that President Trump obscured his liabilities by commingling them with the debts of business entities for which he was not liable. This complaint was ultimately dismissed on the basis that the President was improperly sued in his official capacity. *Lovitky v. Trump*, No. 18-5105, 2019 U.S. App. LEXIS 7658 (D.C. Cir. Mar. 15, 2019).

## FACTUAL AND LEGAL BACKGROUND

13. The President is required to file his financial disclosure reports directly with the Director of the Office of Government Ethics. 5 U.S.C. App. § 103(b). The reviewing officials at the OGE must determine whether the report includes each required item to be completed. 5 C.F.R. § 2634.605(b)(2)(i). Disclosures contained in the report must be taken at "*face value*" as correct, "*unless there is a patent omission or ambiguity or the official has independent knowledge of matters outside the report*." 5 C.F.R. § 2634.605(b)(3).

14. President Trump certified his financial disclosures as being "*true, complete and correct*."  These disclosures were subsequently determined by the appropriate reviewing officials to be in apparent compliance with the disclosure requirements of the Ethics in Government Act.

15. On or about December 15, 2016, Appellant filed an application for a copy of the May

6

16, 2016 report through the website of the OGE . On December 19, 2016, the OGE sent an email

to Appellant attaching copies of the May 16, 2016 financial disclosure report. *Id*. There is no

requirement to submit an application for the financial disclosure reports that have been filed by

the President while in office, i.e., May 2017, May 2018, and May 2019. Instead, copies of reports

filed by the President are made available on the OGE website without any requirement for a

separate application.

16. The President's financial disclosure statements were made on an OGE Form 278e.

Part 2 of the OGE 278e filed by the President identifies the various business entities in which he

has a financial interest, together with a brief description of the underlying assets of those entities.

Part 8 of the OGE 278e filed by the President contains a listing of financial liabilities, as well as

the identity of the creditor and a brief description of the nature and terms of those liabilities.

(a) The President Is Not Liable For Certain Of The Debts Listed On His May 2018 and/or
May 2019 Financial Disclosure Statements

17. The President is not liable for some of the debts listed on Part 8 of his May 2018

and/or May 2019 financial disclosure statements. In support of this allegation, plaintiff

incorporates as Exhibit 7 the mortgage given by the Trump National Golf Club Colts Neck LLC.

Exhibit 7 was downloaded from the website of the Office of Records Management, Monmouth

County Clerk's Office, New Jersey Open Public Records Search System,

http://oprs.co.monmouth.nj.us/oprs/clerk/ClerkHome.aspx?op=basic (last accessed April 19,

2019).  Exhibit 7 may be readily retrieved by going to the above website, selecting Instrument

Number, and typing in number 2008097827, which is the Instrument number appearing on the

first page of Exhibit 7.

18. Pursuant to Section 3.19 of the mortgage given by the Trump National Golf Club Colts Neck LLC, no member or manager of the LLC is liable for the debt secured by this mortgage. Section 3.19 further provides that the sole remedy of the lender with respect to the amounts due under the loan documents shall be against the Trump National Golf Club Colts Neck LLC. The disclosure statements filed by President Trump identifies him as President and member of the Trump National Golf Club Colts Neck LLC. See e.g. Exhibit 2, Part 1, p. 10 of 58, Line No. 413. As such, the President is not liable for the debt secured by the mortgage given by the Trump National Golf Club Colts Neck LLC.

19. Plaintiff further incorporates the mortgage agreements referred to in Part 8 of the disclosure statement of the following entities:  TIHT Commercial LLC (attached as Exhibits 8 and 15), Trump Park Ave. LLC (attached as Exhibit 9), Trump Plaza LLC (attached as Exhibit 10), Trump Tower Commercial LLC (attached as Exhibit 11), Seven Springs LLC (attached as Exhibit 12), 1125 South Ocean LLC (attached as Exhibit 13), as well as a UCC Financing Statement for the Trump Old Post Office LLC (attached as Exhibit 14).  The mortgages/UCC Financing statement identified in Exhibits 7 through 15 do not directly or indirectly identify the President as an obligor under any loans secured by such mortgages/financing statements. Information pertaining to whether any parties other than the business entity mortgagor may be liable under the debt secured by such mortgages cannot be definitively ascertained unless one also has access to the underlying note and debt instruments. Nonetheless, the absence of any identification of the President as an obligor on the mortgage documents creates a plausible inference that the President is not liable for the underlying debt secured by such mortgages.

20. Exhibits 8–11 may be downloaded from the New York City Department of Finance, Office of the City Register, Automated City Register Information System. Exhibit 8 may be

downloaded through the following URL: https://a836-

acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2006080201174003 (last

accessed April 19, 2019).  The renewal mortgage identifying Ladder Capital as the new lender is

attached as Exhibit 15. Exhibit 15 may be downloaded through the following URL: https://a836-

acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2016071300114003 (last

accessed April 19, 2019);  Exhibit 9 may be downloaded through the following URL:

https://a836-

acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2010072801017011 (last

accessed April 19, 2019); Exhibit 10 may be downloaded through the following URL:

https://a836-

acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2014070902789007 (last

accessed April 19, 2019); Exhibit 11 may be downloaded through the following URL:

https://a836-

acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2012090501110004 (last

accessed April 19, 2019); Exhibit 12 may be downloaded through the website of the Office of

the Westchester County Clerk, https://wro.westchesterclerk.com/landsearch.aspx (last accessed

April 19, 2019) (prior registration required); Exhibit 13 may be downloaded from the website of

the Clerk and Comptroller of Palm Beach County, Florida, http://oris.co.palm-

beach.fl.us/or_web1/or_sch_1.asp  (last accessed May 17, 2019); Exhibit 14 may be downloaded

from the website of the District of Columbia, Office of Tax and Revenue, Recorder of Deeds,

https://countyfusion4.kofiletech.us/countyweb/login.do?countyname=WashingtonDC (last

accessed April 19, 2019) (prior registration required).

  21.  The mortgages/financing statements contained in Exhibits 7 through 15 are the same

as those identified on Part 8 of the President's disclosure statements. This is demonstrated by the fact that the identity of the mortgagor and creditor, as well as the amounts of the indebtedness and the date on which the indebtedness was incurred, as stated on Part 8 of the disclosure statement, is the same as stated on the first page of the mortgages/financing statements in Exhibits 7 through 15.

(b) Personal Liability Exists For Certain Of The Other Loans Listed On The May 2018 And/Or May 2019 Financial Disclosure Statements

22. The President is personally identified as the obligor in the mortgages given on the properties at 1094 S Ocean Blvd., and 124 Woodbridge Rd. Attached as Exhibit 16 is the mortgage for the property at 1094 S Ocean Blvd. Attached as Exhibit 17 is the mortgage for the property at 124 Woodbridge Rd. Exhibits 16 and 17 may be retrieved through the website of the Clerk and Comptroller of Palm Beach County, Florida, http://oris.co.palm-beach.fl.us/or_web1/or_sch_1.asp (last accessed April 19, 2019), and then searching by Book/Page number.  Exhibit 16 is at Book Number 8105 and at Page Number 1681. Exhibit 17 is at Book Number 8046, Page Number 1579.  The mortgage on the property at 1094 S Ocean Blvd was satisfied on June 15, 2017.  Exhibit 18.  Exhibit 18 may be retrieved through the website of the Clerk and Comptroller of Palm Beach County, Florida, http://oris.co.palm-beach.fl.us/or_web1/or_sch_1.asp, and then by searching Clerk File Number 20170224976. The mortgage on the property at 124 Woodridge Rd. was satisfied on October 23, 2017.  See Exhibit 19. Exhibit 19 may be retrieved through the website of the Clerk and Comptroller of Palm Beach County, Florida, http://oris.co.palm-beach.fl.us/or_web1/or_sch_1.asp, and then by searching Clerk File Number 20170375299.

23. The President is also personally identified as the borrower on a loan from Michael

Cohen, the President's former personal attorney.  The President stated that *he believed* the payment to Mr. Cohen was "*not required to be disclosed,*" because an obligation to reimburse an expense does not reflect a "*reportable liability.*"  However, he nonetheless voluntarily disclosed it in the "*interest of transparency*." See Exhibit 4, Part 8, May 15, 2018 financial disclosure report. The OGE determined that the President was required to report this loan as a reportable personal liability.  *See* Note 3 to Part 8 of the 2018 financial disclosure report, which is contained on the first page of the 2018 financial disclosure report.

24. The President also has personal liability in connection with the loan to 40 Wall Street LLC.  Attached as Exhibit 20 is a copy of the mortgage given to Ladder Capital Finance LLC by 40 Wall Street LLC.   This mortgage may be retrieved through the following URL: https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2015071401070003 (last accessed May 17, 2019).  The mortgage states that the pre-existing mortgages as evidenced by Schedule 1 to the mortgage remains in full force and effect. The mortgage states as follows: "Neither this Mortgage nor anything contained herein shall be construed as a substitution or novation of the indebtedness evidenced by the Existing Notes or of the Existing Mortgages, which shall remain in full force and effect, as hereby confirmed, modified, restated, and that the execution of the new mortgage agreement in no way impairs the liens created by the existing mortgages." Schedule 1 further incorporates a Loan Modification Agreement between Capital One, N.A. and 40 Wall Street LLC, and Donald J. Trump individually, recorded December 6, 2010 as CRFN 2010000408237.

25. Attached as Exhibit 21 is the above referenced Loan Modification Agreement. This agreement may be retrieved through the following URL: https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2010112901169001 (last

accessed May 17, 2019).  This Loan Modification Agreement identifies Donald Trump as

individually providing a Limited Principal Guaranty, and that this Limited Principal Guaranty

"*constitutes a legal, valid and binding obligation of Trump, enforceable in accordance with its

terms*."   As such, the President has personal liability on the loan to 40 Wall Street LLC.

26. There is no information in the public records pertaining to the loans made to the

following entities as listed in Part 8 of the financial disclosure statement: (a) Trump National

Doral, (b) Fifty–Seventh Street Associates, LLC, and (c) TIHT Chicago. Nonetheless, the

President would not have been required to report these debts unless they were personal liabilities.

Therefore, these debts must also be presumed to represent personal liabilities.

(c) <u>The President Was Required To Report Only Personal Liabilities</u>

27. The Ethics in Government Act and implementing regulations requires disclosure of

*only* those liabilities for which filers are personally liable, 5 U.S.C. App. § 102(a)(4); 5 C.F.R §

2634.305(a), or for which the spouse or dependent child of the filer is personally liable. 5 U.S.C.

app. § 102(e)(1).  The Instructions for completion of financial disclosure reports issued by the

OGE also require disclosure of only personal liabilities. Exhibit 22, Instructions for completing

Part 8 of OGE Form 278e.  See also Id., Summary of Contents, Part 8, Instructions for

completing Part 8 of OGE Form 278e. These instructions may be retrieved through the following

URL:

https://www.oge.gov/web/oge.nsf/0/48EAF45DA952AAB685257FFD006CCE93/$FILE/OGE%

20Form%20278e_PDF%20ver.pdf (last accessed April 21, 2019).

28. The statute and implementing regulations do not require disclosure of liabilities of

business entities in which a filer or his spouse or dependent child has a financial interest, unless

the filer, his spouse, or dependent child is also personally obligated for those liabilities.  5 U.S.C.

app. § 102(a)(4); 5 U.S.C. app. § 102(e)(1); 5 C.F.R § 2634.305;  5 C.F.R § 2634.311(a)(3). The

Public Financial Disclosure Guide (hereinafter "Guide") dated January 1, 2019 states as follows:

"*Do not include a loan owed by a LLC, unless you, your spouse or dependent child is also*

*personally liable for that same loan*."  *See* Guide, January 1, 2019, pp. 209, 357.  Exhibit 23

contains relevant pages from the 2019 Guide. The Public Financial Disclosure Guide may be

retrieved through the following URL:

https://www.oge.gov/web/OGE.nsf/Resources/Public+Financial+Disclosure+Guide+(2019) (last

accessed April 21, 2019).  The Guide further states as follows: "*If you do not have any liabilities*

*to report, you need to state this fact.*"*Id.*

29. The July 2016 version of the Guide stated that disclosure of non-personal business

liabilities may be required in one situation, i.e., when the liabilities of a privately held company

are unrelated to the operations of the business entity. *See* 2016 Guide, p. 242, 248, 268. Excerpts

from 2016 Guide are attached as Exhibit 24. The 2016 Guide may be retrieved through the

following URL:

https://www2.oge.gov/Web/278eGuide.nsf/Public%20Fin%20Disc%20Guide_PrintJuly2016.pdf

(last accessed April 21, 2019). The 2016 Guide also requires separate identification of unrelated

business assets. *Id.*, p. 248.

30. An unrelated business liability is a liability "*unrelated to the operations of that trade*

*or business.*" 2016 Guide, p. 242.  An unrelated business asset is an asset that is "*unrelated to the*

*operations of that trade or business.*"  2016 Guide, p. 248. An example of an unrelated business

liability would be a swimming pool company that incurs a liability to purchase an apartment

house.  *See* Exhibit 25 Instructions to OGE Form 278, pp. 4, 10. An example of an unrelated

business asset would be a real estate company that owns an interest in a bank. Id.,p. 5.

31. The President was required in Part 2 of the disclosure statement to list his assets in a trade or business in excess of $1,000. 5 U.S.C. app. § 102(a)(3). This listing contains a description of the "*underlying assets*" of each of the entities listed therein.  It is reasonable to infer that the LLC would have unrelated business assets if the debts reflected on Part 8 represented unrelated business liabilities. It may reasonably be inferred that if the money was borrowed for a purpose unrelated to the operations of the business, then it must have been used to purchase an asset that was unrelated to the operations of the business. However, the listing of the assets contained in Part 2 does not further list any additional assets that are unrelated to the "*underlying assets*."  As such, plaintiff alleges upon information and belief that the liabilities listed in Part 8 of the financial disclosure statements were not unrelated business liabilities.

32. Moreover, certain of the mortgages listed in Part 8 expressly prohibit the LLC from engaging in any unrelated business activities. For example, Section 1.23(a) of the mortgage given by the Trump National Golf Club Colts Neck, prohibits the mortgagor from engaging "*in any business activity other than the ownership, operation and maintenance of the Premises, and those business activities in which Mortgagor is currently engaged, and activities incidental thereto*."   Section 1.23(b) states that the LLC may not "*acquire or own any material assets other than (i) the Premises, and (ii) such incidental Chattels and Intangibles as may be necessary for the operation of the Premises, and those business activities in which Mortgagor is currently engaged*." See Exhibit 7, Trump National Golf Club Colts Neck mortgage. *See also* Para. 11(b) of mortgage of TIHT Commercial LLC to UBS Real Estate,  "*Mortgagor has not engaged and will not engage in any business other than the ownership, management and operation of the Mortgaged Property and Mortgagor will conduct and operate its business as presently conducted and operated*."  *See* Exhibit 8, mortgage of TIHT Commercial LLC to UBS Real

Estate.

33. The President was also required to report the separate liabilities of his spouse and dependent child. However, the President's duty to disclose the debts of his spouse and dependent child had no impact on his disclosure requirements in this case. The reason being that it is clear from the financial disclosure statements that no such separate liabilities exist.

34.  The statute contains a built-in mechanism by which the debts of the President can be readily differentiated from the separate debts of his spouse or dependent child. The President's debts in excess of $1,000,000, whether held individually or jointly with his spouse and dependent child, must be reported using the following valuation categories: (a) greater than $1,000,000 but not more than $5,000,000; (b) greater than $5,000,000 but not more than $25,000,000; (c) greater than $25,000,000 but not more than $50,000,000; and (d) greater than $50,000,000. 5 U.S.C. app. § 102(d)(1). On the other hand, the separate debts of the President's spouse or dependent child in excess of $1,000,000 must be reported using a single valuation category, i.e., greater than $1,000,000. 5 U.S.C. app. § 102(e)(1)(F).

35. It is evident from the valuation categories assigned to the debts listed on the disclosure statement that to the extent the President's spouse or dependent child *may* have been liable for those debts, such liability was held jointly with the President.

36. Moreover, the record contains no information upon which it could be plausibly inferred that the President's spouse or dependent child was either jointly or individually liable for any of the debts listed on Part 8 of the disclosure statement. Neither the President's spouse nor his dependent child was named as an obligor on any of the mortgages listed in the disclosure statement. The financial disclosure report did not disclose the President's spouse or dependent child as receiving any income from any of the business entities listed in Part 8 of the disclosure

statement. Nor did the President identify his spouse or dependent child as having any ownership interest in any of these business entities.

37. Accordingly, while the President was required to report the separate liabilities of his spouse and dependent child, the only debts that he was legally required to report under the circumstances of this particular case were his debts. Moreover, even if such liabilities existed, the President would still have been required to distinguish between the personal liabilities of his spouse/dependent child and the non-personal liabilities of business entities.

38. As no unrelated business liabilities existed, and as the President's spouse and dependent child were not separately liable for any of the debts listed in Part 8 of the financial disclosure statements, the only liabilities that the President was required to report were his liabilities.

39. The Trust established by the President to manage his businesses during his Presidency is under the control of his two adult sons, and the CFO of the Trump Organization. As such, the Trust does not meet the requirements for a qualified blind trust set forth in OGE's regulations. The President's decision not to appoint independent trustees to manage his Trust was contrary to the advice of the OGE.

**Alleged Violation Of 5 U.S.C. App. § 102(a)(4), 5 U.S.C. App. § 102(b)(1)(B), and 5 C.F.R § 2634.305(a)**

40. The President was required to disclose in Part 8 of the financial disclosure report only personal liabilities. 5 U.S.C. app. § 102(a)(4); 5 U.S.C. app. § 102(e)(1); 5 C.F.R § 2634.305;  5 C.F.R § 2634.311(a)(3).

41. The President is obligated for some of the liabilities listed in Part 8 of his May 15 2018 and May 15, 2019 financial disclosure reports. Specifically, the President was liable for the indebtedness secured by the mortgages given on the properties at 1094 S Ocean Blvd., and 124

Woodbridge Rd, as well as the loan given by Michael Cohen. The President also has personal liability for the debt secured by the mortgage given by 40 Wall Street LLC to Ladder Capital Finance LLC.

42. There is no information in the public records pertaining to the loans made to the following entities as listed in Part 8 of the financial disclosure statement: (a) Trump National Doral, (b) Fifty–Seventh Street Associates, LLC, and (c) TIHT Chicago. Nonetheless, the President would not have been required to report these debts unless they were personal liabilities. Therefore, these debts must also be presumed to represent personal liabilities.

43. It is also evident that the President is not liable for some of the business entity liabilities listed in his May 15, 2018 and May 15, 2019 disclosure reports. Specifically, the President is not liable for the indebtedness secured by the mortgage given by the Trump National Golf Club Colts Neck LLC, attached as Exhibit 7, pursuant to the express terms of that mortgage.

44. Moreover, the mortgages/UCC financing statement identified in Exhibits 7 through 15 do not directly or indirectly identify the President as an obligor under any loans secured by such mortgages. The absence of the President being named as an obligor in these documents creates a plausible inference that the President is not liable for the loans secured by these mortgages/UCC financing statements. Accordingly, plaintiff alleges upon information and belief that the President is not liable for the debts of the following entities: Trump National Golf Club Colts Neck LLC, TIHT Commercial LLC, Trump Park Ave. LLC, Trump Plaza LLC, Trump Tower Commercial LLC, Seven Springs LLC, 1125 South Ocean LLC, and Trump Old Post Office LLC.

17

45. Part 8 of the President's May 15, 2018 and May 15, 2019 financial disclosure statements commingled personal liabilities with non-personal liabilities incurred by business entities. This makes it impossible to identify exactly which liabilities listed on Part 8 of the President's financial disclosure statements represent personal liabilities. Allen Weisselberg, Chief Financial Officer of the Trump Organization, further supports this allegation. Mr. Weisselberg stated in an interview with the New York Times that the President "*overdisclosed*" the liabilities in his financial disclosure reports. Mr. Weisselberg stated that the President was liable for a "*small percentage of the corporate debt*" disclosed in his financial disclosure reports. However, he declined to identify that portion of the corporate debt for which the President was liable. New York Times, Trump's Empire: A Maze of Debts and Opaque Ties, August 20, 2016. Exhibit 26, retrieved through https://www.nytimes.com/2016/08/21/us/politics/donald-trump-debt.html (last accessed April 19, 2019).

46. Taken at face value, all of the liabilities listed in Part 8 of the President's financial disclosure statements represent personal obligations, both because those are the only liabilities that the President was required by law to report, and further because it is facially evident from the financial disclosure statement that the President had no unrelated business liabilities. However, the President's financial disclosure statements may not be taken at face value, because not all of the liabilities listed in Part 8 represent personal obligations.

47. The President had a non-discretionary duty to disclose personal liabilities.  The President's financial disclosure statements make it impossible to distinguish between personal liabilities and non-personal liabilities incurred by business entities. The President failed to perform his non-discretionary duty to specifically identify the personal liabilities that he was required to disclose. His failure to do so violated 5 U.S.C. App. § 102(a)(4), and 5 C.F.R §

2634.305 (requiring disclosure of only personal liabilities), as well as 5 U.S.C. app. §

102(b)(1)(B) (requiring a "*full and complete statement*" of the information required to be

disclosed by 5 U.S.C. app. § 102(a)(4)).

48. The President had a further non-discretionary duty to file a financial disclosure

statement that may be taken at face value.  This duty is inherent in the requirement to provide

*"full and complete"* disclosures.  5 U.S.C. app. § 102(b)(1)(B). It is also inherent in the

President's certification of his financial disclosure statements as being "*true, complete, and*

*correct.*" The President failed to perform this non-discretionary duty because his financial

disclosure statements cannot be taken at face value.

## COUNT I

49. The allegations in Paragraphs 1-48 are incorporated as if fully set forth herein.

50. The President has a non-discretionary duty to specifically identify the liabilities that

he was required to report. There are no other remedies available to Plaintiff by which this

information can be obtained except through relief in the nature of mandamus.

51. The provisions of 28 U.S.C. § 1361 provide a statutory basis for jurisdiction in cases

seeking relief in the nature of mandamus against federal officers, including the President of the

United States. The provisions of 28 U.S.C. § 1361 also provide for an independent cause of

action in the absence of any other available remedies.

52. Granting the relief requested herein would serve the public interest. The potential for

conflicts of interest on the part of President Trump is unprecedented in the modern era. The very

foundation of our government could be damaged if the public believes that governmental

decisions are being influenced by what is in the best financial interest of the President.

53. The President has not taken the steps followed by his predecessors to eliminate the potential for financial conflicts of interests.  These steps include divestment, and the transfer of assets into a blind trust managed by an independent trustee. See letter from the Office of Government Ethics to Senator Carper dated December 12, 2016, p. 10,  attached as Exhibit 27 (retrieved from the OGE website at https://www.oge.gov/web/oge.nsf/0/092B59EFD6EC27608525808800724288/$FILE/Carper%2 0response.pdf (last accessed April 19 2019),

54. According to documents released by the General Services Administration (GSA), the trust established by the President to manage his businesses during his Presidency is under the control of his two adult sons and the CFO of the Trump Organization. See Exhibit 14 to letter from GSA contracting officer dated March 23, 2017 to Donald J. Trump, Jr. attached as Exhibit 28 (the entire letter including all exhibits, which consists of 166 pages, is available on the GSA website at https://www.gsa.gov/portal/getMediaData?mediaId=157798) (last accessed April 19, 2019).

55. The President acted contrary to the advice of the OGE in not appointing independent trustees to manage his trust. See OGE Director Schaub's remarks to the Brookings Institution on January 11, 2017, attached hereto as Exhibit 29 (copy retrieved from OGE's website at https://www.oge.gov/web/oge.nsf/0/6E08189CF6AF742B852580A500799063/$FILE/Remarks %20of%20W%20M%20Shaub%20Jr%20(1).pdf (last accessed April 19, 2019)

56. Plaintiff is entitled to relief in the nature of mandamus, directing the President to amend his financial disclosure reports dated May 15, 2018 and May 15, 2019, for the purpose of specifically identifying the liabilities that he was required to report.  Plaintiff is further entitled to preliminary injunctive relief, because absent such relief Plaintiff will suffer irreparable injury.

WHEREFORE, Plaintiff prays:

(a)     For injunctive and mandamus relief, directing the President to amend his financial

disclosure reports dated May 15, 2018 and May 15, 2019, for the purpose of specifically

identifying any liabilities that he was required to report;

(b)     For a declaratory judgment that the President violated 5 U.S.C. app. § 102(a)(4), 5 U.S.C.

app. § 102(b)(1)(B), and 5 C.F.R § 2634.305(a), by failing to provide a full and complete

statement of personal liabilities on his May 15, 2018 and May 15, 2019 financial disclosure

statements;

(c)     For the costs of this suit incurred by Plaintiff, and;

(d)     For such other and further relief as the Court may deem just and proper.


                                        Respectfully submitted,

                                        /s/ Jeffrey A. Lovitky
                                        _____
                                        D.C. Bar Number 404834
                                        1776 K Street, N.W., Suite 800
                                        Washington D.C. 20036
                                        Tel: (202) 429-3393
                                        Fax: (202) 318-4013
                                        Email: jefflovitky@gmail.com