IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY A. LOVITKY<br>1776 K Street, NW, Suite 800<br>Washington D.C. 20006<br>Plaintiff, | )<br>)<br>)<br>)<br>)<br>) |
| v. | ) Civil Action No. 19-cv-01454-CKK<br>)<br>) |
| DONALD J. TRUMP,<br>in his official capacity as<br>President of the United States<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>) |

DECLARATION OF JEFFREY LOVITKY

I, Jeffrey Lovitky, declare the following to be true and correct.

1. My name is Jeffrey Lovitky. I started practicing law as a military officer in the U.S. Army Judge Advocate General's Corps from 1981-1984. Between 1984-1988, I was a civilian attorney for the U.S. Department of Justice. From 1988-1990, I worked as an associate at the law firm of Epstein, Becker, and Green. I opened my own law office in 1990, and have been continually practicing law as a sole practitioner since that date. My practice mostly involves representation of hospital systems in connection with Medicare reimbursement disputes.

2. I am registered to vote in Harris County, Texas. The first time I voted was in the 1972 Presidential elections. Since that time, I have voted for both Democratic and Republican candidates for elected office. In 2010, I affiliated as a Republican by voting in the Harris

1

County Republican Congressional primary. I also intend to vote in the upcoming March 3, 2020 Texas Republican Presidential primary, as well as the November 3, 2020 Presidential elections.

3. The information sought by this litigation is whether the debts listed on Part 8 of the President's financial disclosure statements represent personal liabilities, or non-personal liabilities of business entities.

4. A lender will be in a position to exert far more influence on the President if the loans listed on Part 8 represent personal obligations. The reason is obvious. All of the President's assets are at risk in the event a personal liability is not repaid. On the other hand, the President may have little or no financial exposure if the non-personal obligations listed on his financial disclosure statements are not repaid.

5. There is considerable potential for conflicts of interest resulting from loans of the magnitude listed on the President's financial disclosure statements. The President is in a position to exert considerable influence over the various activities of government agencies that directly impact the financial well-being of the lenders listed on his financial disclosure statements. Therefore, the President is in a position to pressure his lenders to provide favorable treatment solely by virtue of being President. This in turn could significantly affect the willingness of those same lenders to strictly enforce the terms of the loan agreements.

6. The information sought by this litigation is required in order to evaluate the past President's performance in office, and to make an informed judgment as to whether the President's personal financial interests could in the future influence his official decisions. The issue of whether the President's official decisions, both past and future, were or

could reasonably be impacted by personal financial considerations will be a critical factor in deciding whether I will vote for him in the Presidential primary and/or the general election.

7. Moreover, the pressure to repay personal loans of the magnitude listed on the President's financial disclosure statements could reasonably cause any individual to be distracted from devoting his or her entire attention to the performance of official duties. At worst, the vulnerabilities caused by personal debts of this magnitude could induce any President to seek help from foreign persons or governments or from domestic persons for the purpose of obtaining the funds necessary to repay the loans. Accordingly, the issue of whether the debts listed by the President represent personal obligations will be a critical factor in my decision whether to vote for him in the March 3, 2020 Presidential primary and the November 3, 2020 general election.

8. Absent expedited treatment of this case, I will suffer irreparable harm, because I will be required to cast my vote prior to having the information I need to decide whether to vote for the President. My judgment as to whether the President's official actions have been or could be influenced by personal financial considerations will be of critical importance in my voting decision. However, I am unable to evaluate the extent or the severity of any actual or potential conflicts of interest unless I know whether the debts listed in the President's financial disclosure statements represent personal obligations. In sum, I will be unable to make an informed voting decision in connection with the March 3, 2020 Texas Presidential Primary, as well as the general election on November 3, 2020, absent the information sought by this litigation.

9. Even aside from voting issues, the information would also assist me in participating in the political process in an informed manner. I may use the information sought by this litigation for the purpose of petitioning members of Congress to enact legislation to strengthen conflicts of interest laws, and to conduct hearings on any actual or potential conflicts of interest on the part of the President. I may also use the information sought by this litigation for the purpose of enlisting the news media to publicize any conflicts of interests on the part of the President, thereby focusing public attention on the issue. I would also use the information for the purpose of speaking intelligently with friends and colleagues concerning actual or potential conflicts of interests on the part of the President.

10. My ability to meaningfully engage in the various activities listed in the above paragraph is largely contingent upon timely access to the information sought by this litigation. Information pertaining to a conflict of interest that may have existed several years ago is primarily of historical value. On the hand, information demonstrating an ongoing or more recent conflict of interest directly impacts the political process in the here and now. Therefore, the value of the financial disclosures required by the EIGA is significantly diluted when those disclosures are made several years after they are due.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: May 17, 2019

_____
Jeffrey Lovitky